TONY VITRANO COMPANY, Plaintiff,

v.

NATIONAL PRODUCE CO., INC., et al., Defendants.

Civ. A. No. 92–2886 (CRR).

United States District Court, District of Columbia.

March 9, 1993.

Stephen P. McCarron, McCarron & Associates, for plaintiff.

Sheila Footer, Silver, Freedman & Taff, with whom Diana Savit, Silver, Freedman & Taff, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The above-entitled action is before the Court on the Plaintiff's Motion for Injunctive relief and the merits of this action. On February 12, 1993, the Court held a combined hearing on the foregoing pursuant to Rule 65 of the Federal Rules of Civil Procedure.[1] At the hearing, the Court heard testimony from the two witnesses presented by the Plaintiff; the Defendants did not wish to present any testimony.

After carefully considering the parties' submissions, the arguments of counsel, the testimony of the witnesses, and the underlying law, the Court shall grant the Plaintiff's motion and find for the Plaintiff in this action. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

The Plaintiff filed this suit on December 29, 1992, under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499e(c)(4). The Plaintiff, Tony Vitrano Company, is a Maryland Corporation which is and has been engaged in the business of buying and selling wholesale quantities of perishable agricultural produce in interstate commerce. The Defendant National Produce Company, Inc., has been a dealer or commission merchant of produce and is subject to PACA. Also named as Defendants in this action are two officers of the Defendant National Produce: Mr. Boris Ballard and his brother Albert. Boris Ballard has been the Chairman of National Produce for at least the last six years and is responsible for the day-to-day operations of the Defendant–Corporation.

In its complaint, the Plaintiff alleges that the Defendants have not paid for produce that was supplied to them by the Plaintiff. The Plaintiff also alleges that this money constitutes a constructive trust under PACA. *Id.* § 499e(c)(2) (Supp.1992). It is agreed by the parties that the Defendant–Corporation owes the Plaintiff the sum of $160,860.72. It is also agreed that $40,478.86 has been placed in a trust account to be disbursed to the Plaintiff in accordance with the statute. In addition, the parties agree that some $40,000 in receivables, which the Defendant–Corporation has outstanding from its accounts, is to be collected and placed in this trust account. It is also not disputed that the Plaintiff has properly complied with the provisions of PACA for the purpose of preserving its trust benefits. *Id.* § 499e(c)(3).

The sole question that remains in dispute is whether two pieces of improved real estate owned by the Defendant–Corporation should be used to satisfy the amount owed to the Plaintiff under PACA.[2] The Court finds that the proceeds from the property are subject to the constructive trust created by PACA and, therefore, that the Plaintiff is entitled to proceeds from the sale of the property to satisfy its PACA claim.

PACA creates a statutory trust for unpaid sellers of perishable agricultural commodities. 7 U.S.C. § 499e(c)(2). PACA provides that:

> [p]erishable agricultural commodities ... and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers ... until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

*Id.* Thus, the statute requires that a buyer of produce hold its produce-related assets as a trust until full payment is made to the produce seller. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir.1990). A trust under this section allows the buyer to commingle his trust assets with other funds.

---

1. At the hearing and with the parties' consent, the Court combined the Plaintiff's Motion for a Preliminary Injunction with a decision on the merits. Fed.R.Civ.P. 65(a)(2).

2. Boris Ballard testified at the hearing that one of these pieces of property is now the subject of an offer in the form of a written contract from which the Defendant–Corporation may receive cash over and above any existing encumbrances.

*Six L's Packing Co. v. West Des Moines State Bank,* 967 F.2d 256, 258 (8th Cir.1992) ("[I]t is permissible to commingle PACA trust assets with non-trust assets."). However, once any trust assets are commingled, the buyer has the burden of establishing which assets are not subject to the trust. *Gullo Produce Co. v. A.C. Jordan Produce Co.,* 751 F.Supp. 64, 68 (W.D.Pa.1990). Therefore, where there is a dispute over whether certain funds are part of the PACA trust, the burden is on the buyer to show that the commingled assets were not derived from the sale of agricultural commodities provided by the PACA seller. *Six L's Packing Co.,* 967 F.2d at 258. [3] It makes no difference if, as is the case here, "the buyer sells other commodities in addition to produce and commingles the proceeds from the sale of all commodities." *Sanzone–Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1013 (6th Cir. 1993).

▉▉▉ In this case, the Plaintiff alleges that the Defendant–Corporation used trust related assets to make payments on two pieces of real property owned by the Defendant. The Defendants here did not provide any competent evidence to this Court regarding what was done with the income derived from the sale of the Plaintiff's produce. As a result, the Defendants have not met their burden under the statute to show that no PACA trust money was used to make payments on these two pieces of property. *Six L's Packing Co.,* 967 F.2d at 258 (the burden is on the PACA buyer to show that a disputed payment was made from a non-trust source); *Sanzone–Palmisano Co.,* at 1013 (courts have placed the burden of tracing trust assets on the buyer). Therefore, under these circumstances, the Court finds that these real property assets are subject to the PACA trust [4] and the Court shall enter judgment on behalf of the Plaintiff and against the Defendant–Corporation.[5]

### ORDER

Upon consideration of all the papers filed in this action, the arguments of counsel, the testimony of the witnesses, the underlying law, and for the reasons set forth in the Opinion of the Court issued of even date herewith, it is, by the Court, this 9th day of March, 1993,

ORDERED that the Plaintiff's Motion for a Injunctive relief is GRANTED; and it is

FURTHER ORDERED that Judgment shall be and hereby is entered on behalf of the Plaintiff against the Defendant National Produce Corporation for the sum of $160,-860.72; and it is

FURTHER ORDERED that money derived from the sale of the Defendant–Corporation's real property shall be used to cover the sum due the Plaintiff less any amount that has already been set aside in the PACA trust to satisfy the Plaintiff's claim; and it is

FURTHER ORDERED that, with the agreement of the parties, the Defendant Albert Ballard shall be and hereby is DISMISSED with prejudice; and it is

**3.** Courts have recognized that it is usually impossible for a PACA seller to trace the origin of disputed assets and, thus, have placed the burden of tracing the source of funds on the purchaser of agricultural commodities subject to PACA. *See In re Atlantic Tropical Market Corp.,* 118 B.R. 139 (Bank.S.D.Fla.1990); *Gullo Produce Co.,* 751 F.Supp. at 68.

**4.** Under PACA, "the produce suppliers' claims are satisfied first and the remaining unsecured creditors are left to share the substantially reduced amount left after satisfaction of other priority claims." *Sanzone–Palmisano Co.,* at 1013. While the Court is aware that such a result may be characterized as harsh, it is the outcome that Congress intended. *Id.,* at 1013.

**5.** The Plaintiff has moved to dismiss the two individual Defendants in this case, asking the Court to dismiss Albert Ballard with prejudice and Boris Ballard without prejudice. While the Defendants consent to the dismissal of Albert Ballard with prejudice, they object to any dismissal of Boris Ballard without prejudice. Defense counsel contends that any dismissal of Boris Ballard should also be done with prejudice. However, the Plaintiff is unwilling to dismiss Boris Ballard with prejudice.

As it appears that the Plaintiff's claim will be satisfied from the corporate assets in this case, *see* Plaintiff's Memorandum in support of its Motion to Dismiss, dated March 4, 1993, at 2, it is unnecessary for the Court to determine at this time whether the dismissal against Boris Ballard should be done with prejudice. Therefore, the Court shall dismiss this case without prejudice as to Defendant Boris Ballard at this time.

FURTHER ORDERED that the Defendant Boris Ballard shall be and hereby is DISMISSED without prejudice; and it is

FURTHER ORDERED that this case shall be and hereby is DISMISSED from the dockets of this Court.