**J.A. BESTEMAN COMPANY, Plaintiff,**

v.

**CARTER'S, INC., Defendant.**

No. 1:06–CV–425.

United States District Court,
W.D. Michigan,
Southern Division.

July 12, 2006.

David E. Bevins, Rhoades McKee, Grand Rapids, MI, for Plaintiff.

Willard E. Hawley, McDonald Hopkins CO., LPA, Bingham Farms, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT HOLMES BELL, Chief Judge.

This matter is before the Court on Plaintiff J.A. Besteman Company's Emergency Motion for Entry of Order Based on Magistrate Judge's Recommendation (Docket # 13). Plaintiff brought this civil action under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a, *et seq,* seeking recovery of $940,916.73 for perishable commodities purchased by Defendant Carter's Inc. but not paid for and to enforce its PACA trust on the assets of Carter's Inc. Following the entry of a temporary restraining order by this Court, the parties filed a proposed consent decree pursuant to which (1) judg- ment would be entered against Carter's Inc. in the amount of $940,916.73, (2) the temporary restraining order would remain in effect, (3) individual Defendants William R. Harcourt and Thomas V. Robinson were dismissed, and (4) an evidentiary hearing would be held to determine the scope of plaintiff' s PACA trust over Defendant's assets. The Court entered an order granting the consent decree and setting an evidentiary hearing before the Magistrate Judge. Docket # 10.

The Magistrate Judge conducted the evidentiary hearing on July 5, 2006. J.A. Besteman Company appeared and presented testimony of its comptroller and president. Carter's Inc. did not appear at the hearing. Following the hearing, on July 7, 2006, the Magistrate Judge issued a Report and Recommendation recommending that (1) the Court declare that J.A. Besteman Company's PACA trust extends to all real and personal assets of Carter's Inc., and (2) the Court enter an order requiring Carter's Inc. to immediately pay into the treasury of the Court, for the benefit of J.A. Besteman Company, any and all proceeds from any sale or other disposition of any of its real or personal property. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Magistrate Judge provided notice to the parties that any objections to the Report and Recommendation were to be filed within ten days of service of the Report and Recommendation.

Now before the Court, J.A. Besteman Company requests that the Court conduct expedited review of the Report and Recommendation, ahead of the deadline for filing objections, and enter an order consistent with the Magistrate Judge's recommendation. As officers of the Court, J.A. Besteman Company's counsel indicated in their filings that, as of July 7, 2006, Carter's Inc. is no longer in operation. Further, J.A. Besteman Company states, "[i]t is unclear what action Carter's Inc. is tak-

ing or will take, including bankruptcy, or as to what will happen to its assets impressed with Besteman's PACA trust." Pl.'s Br. at 2 (Docket # 14). Clearly, time is of the essence in this matter. Given the precarious situation presented in this case, the Court has conducted an expedited, yet careful, review of the Magistrate Judge's Report and Recommendation. *See McGill v. Goff,* 17 F.3d 729 (5th Cir.1994) (holding that district court's adoption of the magistrate judge's report and recommendation one day after issuance did not constitute reversible error where district court conducted a meaningful review of the report and recommendation), *overruled on other grounds Kansa Reins. Corp. v. Congressional Mortgage Corp.,* 20 F.3d 1362, 1373–74 (5th Cir.1994). The Court finds that the Magistrate Judge properly analyzed the issue of the scope of the PACA trust and properly concluded that the entry of an order of segregation to prevent dissipation of the trust fund assets was appropriate. Accordingly, the Court approves and adopts the Magistrate Judge's Report and Recommendation as the opinion of this Court.

**IT IS HEREBY ORDERED** that Plaintiff J.A. Besteman Company's Emergency Motion for Entry of Order Based on Magistrate Judge's Recommendation (Docket # 13) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Magistrate Judge's July 7, 2006 Report and Recommendation is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Carter's Inc. is permitted to pay its State of Michigan lottery trust obligations.

SCOVILLE, United States Magistrate Judge.

### REPORT AND RECOMMENDATION

This is a civil action brought pursuant to the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a, *et seq.* Plaintiff, J.A. Besteman Company, is a dealer in perishable agricultural commodities. Defendant, Carter's, Inc., runs a chain of retail grocery stores and has purchased perishable agricultural commodities from plaintiff for a period exceeding 22 years. Plaintiff brought this action to recover $940,916.73 for perishable commodities purchased by defendants but not paid for and to enforce its PACA trust on the assets of Carter's, Inc.

On June 19, 2006, the same day that the complaint was filed, Chief Judge Robert Holmes Bell entered a temporary restraining order (docket # 6) preventing alienation of the assets of Carter's, Inc. except in the ordinary course of business and ordering defendant to show cause why a preliminary injunction should not be issued. On June 28, 2006, the parties submitted a proposed consent decree (docket # 9) pursuant to which (1) judgment would be entered against Carter's, Inc. in the amount of $940,916.73, (2) the June 19, 2006 temporary restraining order was continued, (3) the individual defendants were dismissed and (4) an evidentiary hearing would be held to determine the scope of plaintiff's PACA trust over defendant's assets. On June 29, 2006, Chief Judge Bell entered an order (docket # 10) granting the consent decree and setting an evidentiary hearing before me on July 5, 2006, at 2:00 p.m., concerning the scope of the PACA trust.

I conducted the evidentiary hearing as scheduled on July 5, 2006. Plaintiff appeared and presented the testimony of Dennis Defrang, Comptroller of J.A. Besteman Company, and David Besteman, its President. Defendant did not appear at the hearing. On the basis of the evidence presented at the hearing, I recom-

mend that a PACA trust be recognized on all assets of Carter's, Inc. and that an order be entered requiring Carter's, Inc. to pay into the treasury of this court all proceeds from the sale of inventory or any other asset.

### Discussion

### I. Scope of PACA Trust

 PACA creates a statutory trust for unpaid sellers of perishable agricultural commodities. The statute provides in relevant part as follows:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). The trust created by section 499e protects sellers of perishable agricultural commodities against financing arrangements made by merchants who encumber commodities or the proceeds thereof, thus giving sellers precedence over the claims of secured creditors. See Overton Distrib. v. Heritage Bank, 340 F.3d 361, 365 (6th Cir.2003). The Sixth Circuit thus holds that the obligation of a buyer of perishable commodities becomes a trust obligation under the statute "prior to and superior to any lien or security interest in inventory held by the [buyer's] secured lender." Sanzone–Palmisano Co. v. M. Seaman Enter., 986 F.2d 1010, 1012 (6th Cir.1993) (quoting In re Prange Foods Corp., 63 B.R. 211, 214 (Bankr.W.D.Mich.

1986)). The Sanzone–Palmisano court further held that the PACA trust is a "floating" trust, in that it applies to all of the buyer's produce and inventory and all proceeds from the sale of produce. The trust beneficiary is therefore not obligated to trace assets. Rather, when trust and non-trust assets are commingled, the burden is on the debtor to show that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. Id. at 1013–14. Writing for the Sanzone–Palmisano court, Judge Boggs recognized the "harsh effect" that such a rule would inevitably have on other unsecured creditors who were not protected by a PACA trust. The court determined, however, that Congress considered sellers of perishable commodities to be especially vulnerable and therefore intended that they take priority over other unsecured creditors. Id.

 In the present case, plaintiff's claim under PACA arises from unpaid invoices dating back to the year 2003. Under the narrowest view of the statute, a PACA trust attaches to all assets of Carter's, Inc. acquired in the year 2003 and thereafter. See Six L's Packing Co. v. West Des Moines State Bank, 967 F.2d 256, 259 (8th Cir.1992) (indicating that a PACA trust does not include property acquired before the PACA beneficiary first entered into a PACA-qualified transaction with the debtor). A broader view was espoused by the Second Circuit in the case of In re Kornblum & Co., Inc., 81 F.3d 280 (2d Cir.1996). Relying on regulations of the Secretary of Agriculture promulgated to implement the statutory trust, 7 C.F.R. § 46.46, the Second Circuit held that PACA creates a "single, undifferentiated trust for the benefit of all sellers and suppliers." 81 F.3d at 286. Under this view, the PACA trust arises for the benefit of all sellers at the time that a

PACA debt is first incurred, "and continues in existence until all of the outstanding beneficiaries have been paid in full." *Id.* at 286. The Second Circuit determined that the PACA debtor (or other competing creditors) would bear the burden to establish that (1) no PACA trust existed when the disputed assets were purchased; or (2) even though a PACA trust existed at that time, the assets were not purchased with trust funds; or (3) although a PACA trust existed when the property was purchased and the units were purchased with trust funds, the debtor thereafter paid all unpaid sellers in full prior to the transaction involving competing creditors, thereby terminating the trust. *Id.* at 287. In reaching this conclusion, the Second Circuit relied on the Sixth Circuit's decision in *Sanzone–Palmisano.* On this basis, I conclude that the Sixth Circuit would follow the Second Circuit and hold that a PACA trust arises when the first PACA debt is incurred and continues thereafter until all sellers are paid in full. *See also In re Bear Kodiak Produce, Inc.,* 283 B.R. 577 (Bankr.D.Ariz. 2002) (rejecting the *Six L's* rule and following *Kornblum* ).

■ Application of the foregoing principles to this case results in a conclusion that the *res* of the PACA trust in favor of plaintiff extends to all of the assets of Carter's, Inc. The testimony at the evidentiary hearing established that plaintiff began selling perishable commodities to Carter's, Inc. in 1985 and that Carter's, Inc. has always had an unpaid balance since that time. Ninety-five percent of the goods sold to Carter's, Inc. over that period were perishable commodities. Furthermore, since the time the PACA trust first attached, Carter's, Inc. has made payments on debts secured by its equipment and other personalty, as disclosed in plaintiff's Exhibit 1. A PACA trust therefore attaches to all assets held or acquired by Carter's, Inc. since 1985, when a PACA trust first arose. *See Tony Vitrano Co. v. Nat'l Produce Co.,* 815 F.Supp. 23 (D.D.C. 1993). The burden was on Carter's, Inc. to show otherwise. As Carter's, Inc. did not appear at the evidentiary hearing, it failed to discharge its burden of proof.

I therefore recommend that the court declare that the PACA trust in favor of plaintiff extends to all real and personal property of Carter's, Inc.

## II. Injunction Preventing Dissipation of Trust Assets

Plaintiff has sought an injunction requiring Carter's, Inc. to pay into the treasury of this court all proceeds from the sale of any assets, except for funds necessary to meet payroll obligations and taxes. In support of this request, plaintiff has established that Carter's has failed to pay its debts when due, has dishonored checks, and has begun to sell real property outside the ordinary course of business in order to pay its bills. Additionally, another creditor, Nash Finch, Inc., has apparently taken control of the debtor's bank accounts pursuant to a security interest.

The federal courts have held that dissipation of the assets of a PACA trust constitutes irreparable harm sufficient to justify injunctive relief. *See Tanimura & Antle, Inc. v. Packed Fresh Produce,* 222 F.3d 132, 140–41 (3d Cir.2000). The courts have approved the grant of injunctive relief in the form of a segregated trust where the evidence shows that the debtor is in financial distress and that, in the absence of injunctive relief, the PACA beneficiary would be unable to collect on the debt. *See, e.g., DeBruyn Produce Co. v. Olympia Produce Co.,* 734 F.Supp. 483, 485–86 (N.D.Ga.1989).

The federal appellate courts have recognized that preventing the dissipation of

trust assets is the key purpose of PACA. *See Tanimura & Antle, Inc.,* 222 F.3d at 139; *Frio Ice S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir.1990). The factual record before the court satisfies the prerequisites established in the cases cited above for the issuance of an order of segregation to prevent dissipation of trust fund assets.

### Recommended Disposition

For the foregoing reasons, I recommend as follows:

A. That the court declare that plaintiff's trust under the Perishable Agricultural Commodities Act extends to all assets, real and personal, of defendant Carter's, Inc.; and

B. That the court enter an order requiring Carter's, Inc. to immediately pay into the treasury of this court, for the benefit of plaintiff J.A. Besteman Company, any and all proceeds from any sale or other disposition of any of its real or personal property, including but not limited to inventory, until this court's previous judgment is paid in full, provided that Carter's, Inc. shall be allowed to meet its payroll and tax obligations before depositing such proceeds into the treasury of this court. July 7, 2006.